UNITED STATES of America,
Plaintiff-Appellee,

v.

Ferris Jacob ALEXANDER, Defendant-
Appellant.

Ferris Jacob ALEXANDER, Petitioner-
Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 289, 595, Dockets 73-2044, 73-2479.

United States Court of Appeals,
Second Circuit.

Argued Jan. 14, 1974.

Decided June 17, 1974.

Robert J. Milavetz, Minneapolis, Minn., for Ferris Jacob Alexander.

Michael C. Eberhardt, Sp. Atty., Joint Strike Force for the S. D. N. Y., New York City (Paul J. Curran, U. S. Atty., for the S. D. N. Y., New York City, and John D. Gordan, III, Asst. U. S. Atty., of counsel), for the U. S.

Before MOORE, FRIENDLY and AN-DERSON, Circuit Judges.

MOORE, Circuit Judge:

Two appeals are presented together, the first (No. 73-2044) is an appeal from an order (March 5, 1973), denying defendant's application for disclosure of the contents of the pre-sentence report, the second (No. 73-2479) is an appeal from an order (September 10, 1973), denying defendant's motion pursuant to 28 U.S.C. § 2255 to vacate his conviction.

*No. 73-2044*

Defendant with others was convicted of interstate transportation of obscene material, 18 U.S.C. § 1465, and conspiracy, 18 U.S.C. § 371. His conviction was affirmed by this court, United States v. Manarite, 448 F.2d 583 (2 Cir., 1971), cert. denied, 404 U.S. 947, 92 S. Ct. 281, 30 L.Ed.2d 264 (1971).

While incarcerated, defendant moved pursuant to Rule 35, F.R.Cr.P., for a reduction of sentence and disclosure of the pre-sentence report, F.R.Cr.P. 32(c)(2). The motion was denied but upon appeal this court remanded the case to the trial

judge to exercise his discretion with respect to disclosure of all or part of the report. Again the trial court after it had "reviewed and carefully reconsidered the report" declined to disclose it as "not in the interest of justice." This appeal followed.

■ We affirm the trial judge's exercise of discretion in denying disclosure. The trial judge examined the presentence report; we have examined it. Nothing therein contained would have benefited defendant by disclosure or indicated that the sentence imposed was in any way influenced adversely to defendant by the facts therein contained. Defendant's claims of violation of his Fifth and Sixth Amendment rights are wholly without merit.

*No. 73–2479*

While the appeal (No. 73–2044) was pending, defendant by petition pursuant to 28 U.S.C. § 2255, sought to set aside his conviction on the ground that the Supreme Court had "newly announced obscenity standards in Miller v. California," 413 U.S. 15, 93 S.Ct. 2607, 37 L. Ed.2d 419 (1973).

Despite the fact that he was convicted under the older, apparently more limited, definition of obscenity found in Memoirs v. Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), appellant claims that he is presently entitled to a new trial so that the so-called "newer" standards of *Miller* can measure his conduct. He makes this contention in the face of the fact that *Miller* did not reverse the conviction but rather remanded the case to the California appellate court for further consideration in light of its decision.

■ We agree with the Fifth Circuit, which concluded in United States v. Thevis, 484 F.2d 1149, 1154 (5th Cir. 1973), that in the *Miller* decisions the Supreme Court intended merely "that all obscenity cases which had not reached final adjudication should be re-examined in light of its clarification of the previous standards and its declaration of new standards." It did not indicate any intention that convictions that were final on June 21, 1973, should be subject to reconsideration in the light of the decisions of that date.

Even if appellant's case were entitled to further consideration in light of *Miller* (and we have so considered it), there can be no doubt that under the standards set by that case the conviction should stand. Appellant notes that *Miller* sets out "three independent tests which must be met before a challenged work may be found obscene," namely:

(1) whether the average person, applying contemporary community standards, would find that the work, taken as a whole, appeals to the prurient interest; and (2) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

413 U.S. at 24.

■ These three tests have been more than met by the material before the court. We need say no more than was said by Judge Lumbard in his opinion on the appeal on the merits that the "materials graphically depict nude (or virtually nude) men and women, men and men, and women and women engaged in various sexual acts, including sexual intercourse, fellatio, cunnilingus, sodomy and the like in numerous permutations and combinations." 448 F.2d 583, 589, cert. denied, 404 U.S. 947, 92 S.Ct. 281, 30 L.Ed.2d 264 (1971). The material is presented almost entirely in photographs and graphically portrays the models photographed engaged in their activities in grotesque and contortionistic poses. There can be no doubt that they are obscene under any present (*Miller* and related cases) standard.

The Supreme Court in the *Miller* case did not declare that statutory language such as that in Section 1465 was unconstitutional because of vagueness. Previously in Roth v. United States, 354 U.S. 476, 491–494, 77 S.Ct. 1304, 1312, 1 L. Ed.2d 1498 (1957), that Court had specifically upheld the language "obscene,

lewd, lascivious or filthy" against such a challenge. In United States v. 12 200-Foot Reels of Super 8 MM. Film, 413 U.S. 123, 130 n. 7, 93 S.Ct. 2665, 2670, 37 L.Ed.2d 500 (1973), the Court construed the same language as limited to "patently offensive representations or descriptions of that specific 'hard core' sexual conduct given as examples in Miller v. California, *supra.*" Those examples were:

(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals.

413 U.S. at 25.

The Court continued that "At a minimum, prurient, patently offensive depiction or description of sexual conduct must have serious literary, artistic, political, or scientific value to merit First Amendment protection." (413 U.S. at 26).

Since there is no text accompanying the photographs of fellatio, cunnilingus and sodomy and none is required if heed be given to the adage that a picture is worth more than a 1,000 words, "literary" can be ruled out. Likewise, "artistic," except as some depictions might resemble a lewd attempt to imitate the Laocoon group. Nor can politics or science derive any benefit from the pictures.

Therefore, there is no occasion for us to consider borderline cases as did the First Circuit in *Palladino*[1] in which it decided that the pseudo-historical approach of the two volumes of "Anal and Oral Love" which treated in a literate manner "sex practices from early man, through the major ancient civilizations, up to Victorian times . . .", 475 F. 2d at 68, and hence was within the First Amendment protection as a matter of law. Other books in that case apparently were considered sufficiently borderline to be remanded for jury consideration in light of Miller, 490 F.2d 499 at 501–502.

In United States v. Thevis, 484 F.2d 1149 (5th Cir. 1973), the Fifth Circuit, making their own independent constitutional judgment under Jacobellis v. Ohio,[2] held that six magazines were worthy of protection, hence requiring conviction reversal and six not, hence justifying conviction affirmance. However, to make sure that their opinion rested on a foundation of double strength, the court held that "the twelve magazines are to be tested for obscenity under both [*Memoirs* and *Miller*] standards, with the appellants in every instance to receive the benefit of the most favorable standard." 484 F.2d at 1152. Applying the same test, we can without hesitation give appellant the benefit of the most liberal interpretation of the Supreme Court's definitions and hold that he has transgressed under *Memoirs*, *Miller* or under the "plain examples" suggested by that Court.

Defendant prophetically states (Br. p. 11) that "The Supreme Court is prepared in the future to construe the federal statutes to limit them to depictions of 'hard core sexual conduct' which were for the first time and as of June 21, 1973 specifically set forth in *Miller.*" With equal clairvoyance we are prepared to say that one glance at the material here depicted would cause the Supreme Court to place it in the proscribed category but in advance of such an improbable eventuality, we so place it at this time and, hence, deny the § 2255 petition to set aside defendant's conviction.

Motion for reduction of sentence and to disclose the presentence report, denied.

Petition to set aside conviction denied.

1. United States v. Palladino, 475 F.2d 65 (1st Cir. 1973). This case was remanded to the First Circuit by the *Miller* decision and it is its treatment there on remand, 490 F. 2d 499 (1st Cir. 1974), that is discussed below.

2. 378 U.S. 184, 190, 84 S.Ct. 1676, 12 L.Ed. 2d 793 (1964).