UNITED STATES of America,
Appellee,

v.

Philip TRAVERS, Defendant-Appellant.

No. 148, Docket 74–1737.

United States Court of Appeals,
Second Circuit.

Argued Nov. 12, 1974.

Decided Dec. 16, 1974.

Michael Young, New York City (William J. Gallagher and The Legal Aid Society, New York City, of counsel), for defendant-appellant.

Jeremy Epstein, Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty., S. D. N. Y., and Lawrence B. Pedowitz and John D. Gordan, III, Asst. U. S. Attys., of counsel), for appellee.

Before FRIENDLY, FEINBERG and TIMBERS, Circuit Judges.

FRIENDLY, Circuit Judge:

Appellant Philip Travers was convicted in 1969 in the District Court for the Southern District of New York on twenty counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342 and one count of conspiracy to engage in mail fraud in violation of 18 U.S.C. § 371. He was sentenced to two years imprisonment on each count, to run concurrently. The conspiracy proved at trial was to produce, sell, and distribute counterfeit Diners' Club credit cards. While Travers was present on some occasions when a counterfeit card was used and once even requested use by another of such a card for his benefit, the substantive counts were based on use of the counterfeit cards by a co-conspirator, Pucci, for which Travers could be found guilty under the doctrine of Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The mailings were for the purpose of collecting for goods or services already obtained by use of the counterfeit cards. In affirming the conviction, United States v. Kellerman, 431 F.2d 319 (2 Cir. 1970), we rejected a contention that, under Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), and Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 89 L.Ed. 88 (1944), the mailings subsequent to use of the cards were not related to the scheme sufficiently to come within the mail fraud statutes and held the case to be attracted rather by United States v. Sampson, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962), which had distinguished Parr and Kann on their facts. The Supreme Court denied certiorari, 400 U.S. 957, 91 S.Ct. 356, 27 L.Ed.2d 266 (1970). Our construction of the mail fraud statute was shared by four other circuits.

Two other circuits later declined to follow this view. Having granted certiorari to resolve the conflict, the Supreme Court, in a 5–4 decision, United States v. Maze, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), disagreed with the construction we had adopted in Kellerman. The majority opinion, by Mr. Justice Rehnquist, followed Parr and Kann and distinguished Sampson and Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954), on which the Government had also relied. The Government does not dispute here, nor did it in the district court, that if Travers' case were now before us on a direct appeal, we would be obliged to reverse and direct dismissal of the indictment.

■ Shortly after the Maze decision, Travers, who had completed service of his sentence, petitioned the district court for a writ of error coram nobis, requesting that his conviction be vacated and his record expunged. Relying on United States v. National Plastikwear Fashions, Inc., Appeal of Greene, 368 F.2d 845 (2 Cir. 1966), cert. denied sub nom. Greene v. United States, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136, rehearing denied, 386 U.S. 1043, 87 S.Ct. 1490, 18 L.Ed.2d 618 (1967), the judge dismissed the petition on the ground that Travers had asserted no adverse legal consequences and that consequently there was no case or controversy. In so doing he overlooked an important difference that distinguishes Greene's case, namely, that it involved only a one month's sentence for the misdemeanor of criminal contempt. Travers' case is governed rather by United States v. Morgan, 346 U.S. 502, 505, 74 S.Ct. 247, 98 L.Ed. 248 (1954), which established that a motion in the nature of a writ of error coram nobis will lie under the All Writs statute, 28 U.S.C. § 1651, with respect to a federal felony conviction when the sentence has been fully served. Mr. Justice Reed observed, id. at 512–13, 74 S.Ct. at 253 (footnote omitted):

Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected.

We have frequently approved the entertaining of a motion in the nature of a writ in error coram nobis with respect to a felony conviction although the sentence has been served. See, e.g., Kyle v. United States, 297 F.2d 507, 509 (2 Cir.

1961); United States v. Keogh, 391 F.2d 138 (2 Cir. 1968). Indeed, the Government makes no attempt to support the decision on the ground on which it was rendered.

■ We could, of course, remand the case to the district court for consideration of the merits although neither side has requested this. But the issue is solely one of law and sound judicial administration will be furthered by our deciding it.

The Government concedes that, under Davis v. United States, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974),[1] Travers' petition is not subject to dismissal simply because his primary claim is that his conviction was obtained in violation of the laws of the United States as we now know them to be rather than in violation of the Constitution. Its contention rather is that the *Maze* decision should not be given what it terms retroactive effect—more specifically that it should not be applied to convictions that had become final in the sense that all direct appellate procedures had been followed or the time for taking them had expired.[2]

In support of its position that *Davis* left open the issue whether collateral attack could be successfully mounted in a case like this, the Government points to the Court's statement that it expressed "no view on the merits of the petitioner's claim," 417 U.S. at 341, 94 S.Ct. at 2303, and to footnote 12 which read

> In the absence of a decision by the Court of Appeals on the merits of the petitioner's contentions, this case is not an appropriate vehicle to consider whether the Gutknecht decision has retroactive application or whether the

Fox case was correctly decided by the Court of Appeals.

The statement quoted from text seems to mean no more than that the Court was expressing no view whether Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970), had called for a result favorable to Davis on his direct appeal, as another Ninth Circuit panel had decided on what were conceded to be similar facts, United States v. Fox, 454 F.2d 593 (9 Cir. 1971), or whether the panel that had held the contrary in Davis' case, United States v. Davis, 447 F.2d 1376 (9 Cir. 1971), cert. denied, 405 U.S. 933, 92 S.Ct. 939, 30 L.Ed.2d 809 (1972), was correct in ruling *Gutknecht* to be distinguishable, as Mr. Justice Powell in his *Davis* dissent, 419 U.S. at 347, 44 S.Ct. 2298, considered it to be. However, the somewhat inscrutable footnote does appear to have left it open to the Government also to argue, on the remand to the Ninth Circuit in *Davis*, that *Gutknecht*, holding a Selective Service Regulation to have been without legislative sanction, was inapplicable to registrants who had been processed before that case was decided. If it could argue that there, presumably it should be allowed to make the same argument here with respect to *Maze*. We also agree that the Government is not foreclosed by Mr. Justice Rehnquist's statement in dissent in *Davis* that the majority's decision "seems to provide full opportunity for all defendants convicted under the Mail Fraud Act in the circuits whose view was not accepted to relitigate those convictions in a § 2255 proceeding" and that the district courts, "faced with this influx of motions, will be faced with the difficult task of sifting

---

1. Although the *Davis* case arose under 28 U.S.C. § 2255, the standards applied in federal *coram nobis* are similar. *See* United States v. Morgan, *supra*, 346 U.S. at 511, 74 S.Ct. at 252 ("under circumstances compelling such action to achieve justice"); *cf.* United States v. Keogh, *supra*, 391 F.2d at 148–49. While *Davis* depended to some extent on a parsing of the ambiguous language of § 2255, the Government has not disputed its applicability in *coram nobis*.

2. In United States v. Madison, 74 Civ. 693 (S.D.N.Y.1974), a case seemingly on all fours with this one, see 458 F.2d 974 (2 Cir.), cert. denied, 409 U.S. 859, 93 S.Ct. 145, 34 L.Ed.2d 105 (1972), the Government consented, even prior to the *Davis* decision, to an order vacating the conviction and expunging the record under 28 U.S.C. § 2255.

through various factual claims to determine if the principles of *Maze* should be applied", 417 U.S. at 366, 94 S.Ct at 2314,—with no suggestion that such motions could be denied simply on the ground of "non-retroactivity" of *Maze*. Cassandra-like predictions in dissent are not a sure guide to the breadth of the majority's ruling, although it is of some significance that the author of *Maze* fully expected that *Davis* would lead to its application in § 2255 proceedings, at least when the defendant had previously exhausted all avenues of appellate review. We think his expectation was well founded.

The *Maze* decision was no thunderclap like those that have given rise to Supreme Court rulings limiting the temporal effect of constitutional decisions on criminal procedure, such as Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[3] *Maze* blazed no new trails; it simply decided which of two lines of Supreme Court decisions attracted cases where the fraud was perpetrated by use of a stolen or counterfeit credit card, with the mails involved only be the foreseeable efforts of the victim and his bank to effect collection. The Government had known of the argument that prevailed in *Maze* at least since Adams v. United States, 312 F.2d 137 (5 Cir. 1963). Despite its string of successes in five circuits, with frequent denials of certiorari, see United States v. Maze, *supra*, 414 U.S. at 398 n. 2, 94 S.Ct. 645, the Government could not fairly conclude that the battle was forever won. The Tenth Circuit became the first to disagree, United States v. Lynn, 461 F.2d 759 (10 Cir. 1972), a decision from which the Government apparently did not seek certiorari, to be followed shortly by the Sixth in *Maze*, 468 F.2d 529 (6 Cir. 1972). When the Court decided that the Sixth and Tenth Circuits were right and that the five others that had passed on the issue had been wrong, it was discharging its traditional role, as the final expounder of federal statutory law.[4]

The Government thus wisely does not urge that *Maze* should not be applied to cases already tried but still open on direct appeal, compare Bradley v. School Bd. of City of Richmond, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), although such "retroactivity" was denied, for example, to *Miranda,* Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Indeed, any such argument would be foreclosed by the action of the Supreme Court in Osher v. United States, 415 U.S. 971, 94 S.Ct. 1554, 39 L.Ed.2d 868 (1974), in vacating and remanding our affirmance of Osher's conviction, 485 F.2d 573 (1973), for further consideration in the light of *Maze*. Rather the Government's argument goes back to the analysis in Linkletter v. Walker, 381 U.S. 618, 627, 85 S.Ct. 1731, 1736, 14 L.Ed.2d 601 (1965), limiting the retroactivity of Mapp v. Ohio on the basis that "the effect of the subsequent ruling of invalidity on prior final judgments when collaterally attacked is subject to no set 'principle of absolute retroactive invalidity' but depends upon a consideration of 'particular relations . . . and particular conduct . . . [,] of rights, claimed to have become vested, of status of prior determinations deemed to have finality' and 'of public policy in the light of the nature both of the statute and of its previous application,'" the quotes being from Chief Justice Hughes' opinion in Chicot County Drainage District v. Bax-

---

**3.** Judge Medina's opinion in United States v. Liguori, 438 F.2d 663, 670–76 (2 Cir. 1971), contains a useful appendix analyzing the principal Supreme Court decisions on "retroactivity" of constitutional criminal procedure rulings to that time.

**4.** The Government urges in effect that *Maze* was indeed an overruling decision in that it changed "the law of the circuit"—indeed of several. But reliance on the quoted expression, of rather recent vintage, which is only a short-hand way of saying that the views of a court of appeals on an issue of federal law may remain undisturbed for a long time, can lead to dangerously wrong results. There are not eleven omnipresences of federal law brooding over various portions of the United States; in the long run there is only one, although some time may be needed to reveal it.

ter State Bank, 308 U.S. 371, 374, 60 S.Ct. 317, 84 L.Ed. 329 (1940). The Government asserts that under the three-pronged test which has developed in the wake of *Linkletter* for determining whether some decisions should be given retroactive effect, see Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), *Maze* should be denied effect with respect to judgments of conviction that have become final.

We might well agree with the Government if we were here operating in the civil area. If the unconstitutionality of the statute under which the prior proceedings were held in *Chicot County* would not sustain collateral attack on the judgment rendered therein, as was there held, an erroneous construction of a statute should hardly have such an effect. But, with all respect for the statement in *Linkletter*, 381 U.S. at 627, 85 S.Ct. at 1736, that "no distinction [with respect to collateral attack] was drawn between civil and criminal litigation," we think it has been. *Chicot County* was rested on the doctrine of *res judicata*. 308 U.S. at 378, 60 S.Ct. 317. Yet the Court has spoken time and again of "the familiar principle that *res judicata* is inapplicable in habeas proceedings," Fay v. Noia, 372 U.S. 391, 423, 83 S.Ct. 822, 840, 9 L.Ed.2d 837 (1963). *See, e.g.,* Salinger v. Loisel, 265 U.S. 224, 230, 44 S.Ct. 519, 68 L.Ed. 989 (1924); Darr v. Burford, 339 U.S. 200, 214, 70 S.Ct. 587, 94 L.Ed. 761 (1950). We see no reason why this same principle should not be applicable in *coram nobis.*

Indeed Travers asserts that our decision in United States v. Liguori, 438 F.2d 663 (2 Cir. 1971), mandates a decision in his favor. We there sustained rulings by district judges who, in proceedings under 28 U.S.C. § 2255, had vacated convictions for illegal importation of marijuana and small amounts of cocaine which had been obtained by application of the presumption, later declared invalid as lacking a rational basis in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), and Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), that mere possession justified a

finding of illegal importation and knowledge thereof. Speaking through Judge Medina, we held it unnecessary to consider "the three-prong composite *Linkletter* test" since we could dispose of the appeals on the basis of "the simple and universal rule that a judgment in a criminal case in which the prosecution has offered and the record discloses no proof whatever of various elements of the crime charged has a fatal constitutional taint for lack of due process of law" and that this is "the worst type of fundamental unfairness," 438 F.2d at 669, requiring the invalidation of convictions that had become final.

The Government seeks to distinguish *Liguori* on the basis that the application there of *Leary* and *Turner* to a decision that had become final "did no more than set aside convictions predicated on a constitutionally infirm statutory presumption which 'established' conclusively two of the three 'principal' elements of the offense," whereas here the Government simply failed to establish an element of the crime because of its belief, erroneous as matters turned out, that this was not required. We fail to see how this distinction aids the Government here in light of *Davis.* The Court there held, 417 U.S. at 346, 94 S.Ct. at 2305 that if *Gutknecht,* "as interpreted and applied by the Court of Appeals for the Ninth Circuit in the Fox case after his [Davis'] conviction was affirmed, establishes that his induction order was invalid under the Selective Service Act and that he could not be lawfully convicted for failure to comply with that order", his conviction and punishment were for an act that the law does not make criminal, and, quoting from Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 477 (1962), that "such a circumstance 'inherently results in a complete miscarriage of justice' and 'present[s] exceptional circumstances' that justify collateral relief under § 2255", even though *Gutknecht* was not constitutionally based. The *Davis* holding has been encapsulated as being "that fundamental notions of fairness are implicated by continued incarceration after

a change in the judicial interpretation of a statute makes the punished conduct free from sanctions." Note, The Supreme Court, 1973 Term, 88 Harv.L.Rev. 41, 218 (1974) (footnote omitted). A puzzlement that has been noted about *Davis* is why the Court supposed that the Ninth Circuit panel that would hear the case on remand would reach any different result about the applicability of *Gutknecht* than it had on direct review, 472 F.2d 596 (9 Cir. 1972), since, as it had said, *id.* n. 1, it would not be bound by the contrary ruling of another panel in *Fox,* see 88 Harv.L.Rev. at 219, and it was thus not at all clear that any change in "the law of the circuit" had occurred. But there is no such problem here. As a result of *Maze,* we know that Travers was convicted and punished "for an act that the law does not make criminal." It was simply Travers' bad luck that no conflict of decisions had yet developed when he unsuccessfully applied for certiorari from our decision in *Kellerman.* Even though his claim be regarded as simply one arising under the laws of the United States, Travers, having exhausted the appellate process, is entitled to relief. *See* Brough v. United States, 454 F.2d 370 (7 Cir. 1971) (Hastings, J.).[5]

It is true that in Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947), the Court held that collateral attack would not lie against selective service convictions rendered in 1945, which were erroneous under the rule announced early in 1946 in Estep v. United States and Smith v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567. But the decision rested heavily on the failure of the defendants to appeal the convictions. This was held to bar collateral attack even though the rulings of the

lower courts had been consistently contrary to the defendants' contentions and the Supreme Court had denied certiorari in a similar case. See 332 U.S. at 177–78, 181, 67 S.Ct. 1588. Here Travers had run the full appellate course. The *Davis* opinion made much of this point, saying, 417 U.S. at 345, 94 S.Ct. at 2305:

> Thus, Sunal cannot be read to stand for the broad proposition that nonconstitutional claims can never be asserted in collateral attacks upon criminal convictions.[15] Rather, the implica-
>
> [15] Although *Sunal* held that a federal prisoner could not assert a nonconstitutional claim on collateral attack if he had not raised it on appeal, the Court there recognized that this rule would not bar assertion of *constitutional* claims in collateral proceedings even if the applicant had failed to pursue them on appeal. 332 U.S. at 178–79, 67 S.Ct. 1588. Cf. Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969).
>
> tion would seem to be that, absent the particular considerations regarded as dispositive in that case [failure to appeal], the fact that a contention is grounded not in the Constitution but "in the laws of the United States" would not preclude its assertion in a § 2255 proceeding.

■ Where *Sunal* may assist the Government is in limiting collateral attack on the basis of *Maze* to defendants who, like Travers, fully pursued their appellate remedies. It would scarcely be frivolous to argue that a conviction obtained, over timely objection, without proof of an essential element of an offense, is a denial of due process, whatever the reason for the failure to adduce that proof. " 'It is beyond question, of course, that a conviction based on a record lacking any relevant evidence as to a crucial element of the offense

---

5. Compare Judge Coffin's statement in United States v. Fargnoli, 458 F.2d 1237, 1238 (1 Cir. 1972), with respect to the application of Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), also, in the view of four of the five justices joining in the judgment of reversal and of the three in dissent, a case of statutory interpretation only:

> To accord *Welsh,* which interpreted the bounds of a classification, other than fully retroactive effect would be to make what

was not a crime for one registrant a crime under the same statute for another registrant with the same beliefs.

Although *Fargnoli* was still on direct review, Judge Coffin's reference to "fully retroactive effect" indicates to us that, at least under the freedom now accorded by *Davis,* he would apply *Welsh* on collateral attack, at least as to defendants who had exhausted their remedies by way of appeal.

charged [would] violate due process.'" *Vachon v. New Hampshire,* 417 U.S. 478, 480, 94 S.Ct. 664, 665, 38 L.Ed.2d 666 (1974), quoting *Harris v. United States,* 404 U.S. 1232, 1233, 92 S.Ct. 10, 30 L.Ed.2d 25 (1971) (chambers opinion of Douglas, J.). On that basis, under footnote 15 of the *Davis* opinion, *supra,* the principle we apply here to Travers arguably would extend to all defendants convicted in this circuit of mail fraud in connection with the use of stolen or counterfeit credit cards after the denial of certiorari from our decision in *Kellerman* and prior to the Supreme Court's decision in *Maze* without more evidence connecting use of the mails with the fraud than was presented here, since an appeal would apparently have been futile. Compare *United States v. Liguori, supra,* 438 F.2d at 665, citing, *inter alia, Martone v. United States,* 435 F.2d 609 (1 Cir. 1970); see *also United States v. Scott,* 425 F.2d 55, 57–58 (9 Cir. 1974). The difficulty is that the same argument as to the futility of appeal was made unsuccessfully in *Sunal,* see 332 U.S. at 178, 67 S.Ct. 1588, compare *United States v. Sobell,* 314 F.2d 314, 324 (2 Cir.), cert. denied, 374 U.S. 857, 83 S.Ct. 1906, 10 L.Ed.2d 1077 (1963), and that *Davis* distinguished *Sunal* on the very basis that only statutory claims had there been raised. Those claims were that, as later held in *Estep, supra,* 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, the provision of § 10(a)(2) of the Selective Service Act that the decisions of local boards "shall be final" did not preclude defendants from showing that the decisions had no basis in fact. Mr. Justice Douglas' opinion in *Sunal* dismissed the contention that erroneous refusal to admit evidence on that subject was of constitutional proportions since it "robbed the trial of vitality by depriving defendants of their only real defense" on the grounds that "as much might be said of many rulings at a criminal trial" and that "[e]rror in ruling on the question of law did not infect the trial with lack of procedural due process", 332 U.S. at 182, 67 S.Ct. at 1593. Since we see no principled basis for distinguishing between re-

fusal to allow the introduction of evidence to support a statutorily authorized defense and permitting a conviction without evidence of a statutorily required element, we must take *Sunal* as meaning that when the error is one which can be rectified by proper construction of a criminal statute without resort to the Constitution, a claim that a conviction was had without proof of all the elements required by the statute is not a constitutional claim as that phrase is used in respect of collateral attack, and that, in consequence, collateral relief will rarely be accorded to those who, even for apparently good reasons, did not exhaust the possibilities of direct review. This likewise affords a basis for reconciling *Liguori* and other cases involving the effect of *Leary* and *Turner* with *Sunal.* In light of this, we limit our decision here to defendants who, like Travers, had gone through the full appellate process. Except to the extent that the foregoing discussion analyzes the issue, we leave to another day the determination of the proper result when less has been done.

We see no force in the Government's contention that this case is controlled by *Gosa v. Mayden,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973), in that no one contends that Travers' participation in the fraudulent scheme was not criminal and the question is only whether he was prosecuted in the proper forum—federal or state. In *Gosa,* the Court declined to give *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), retroactive effect in connection with Gosa's collateral attack on his court-martial conviction for rape, which was conceded by the Government not to be "service connected" in the sense required by *O'Callahan.* The Court in *Gosa* noted that "the new constitutional standard promulgated [in *O'Callahan* ] does not bring into question the accuracy of prior adjudications of guilt." 413 U.S. at 685, 93 S.Ct. at 2938. There was little question of the accuracy of Gosa's rape conviction by a court-martial. The standard enunciated in *Maze,* while not

**1178**

itself of constitutional dimensions, certainly does "bring into question the accuracy of prior adjudications of guilt." While Travers might have been successfully prosecuted by the State of New York for related offenses, there was no sufficient evidence to support his conviction by a federal court for *mail* fraud.

The Government also asserts that we chose a different path when we denied collateral attack in United States v. Alexander, 498 F.2d 934 (2 Cir. 1974). We did not so intend. Alexander, who had been convicted for interstate transportation of obscene material, 18 U.S.C. § 1465, see United States v. Manarite, 448 F.2d 583 (2 Cir.), cert. denied, 404 U.S. 947, 92 S.Ct. 298, 30 L.Ed.2d 264 (1971), argued that Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), which was meant to relax the previous standard for obtaining obscenity convictions in the states, *id.* at 22, 93 S.Ct. 2607; see United States v. Thevis, 484 F.2d 1149, 1154 (5 Cir. 1973), had the unexpected result of operating in his favor since the community standards of Minneapolis and New York, the places from and to which he had transported the obscene materials, were looser than the "national community standard" applied to the trial of his case. The main thrust of our holding was that the materials transported were obscene under the *Miller* standard or any other. 498 F.2d at 936.[6]

The Government points finally to United States v. Tarrago, 398 F.2d 621 (2 Cir. 1968) (en banc), where we held that our ruling in United States v. Freeman, 357 F.2d 606 (2 Cir. 1966), should be applied to cases still open to direct review. From such statements as "We are not faced here with an attempt at collateral review", 398 F.2d at 623, and "we see good reasons for applying the *Freeman* test to cases not yet final", 398 F.2d at 625, it draws, not unreasonably, the conclusion that we would have reached an opposite result if Tarrago had engaged in collateral attack. While we did not then have the light of *Davis*, that opinion is quite explicit in denying that "every asserted error of law can be raised on a § 2255 motion," 417 U.S. at 346, 94 S.Ct. at 2305, and in allowing such attack on other than constitutional grounds only under the test laid down in Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). It would be absurd to say that application of a formulation of the test for criminal responsibility that had been widely recognized throughout the English speaking world since 1843 had resulted in "a complete miscarriage of justice", the language of *Hill*, simply because this court had recently been persuaded to adopt a more enlightened formulation. Furthermore application of the *Freeman* rule to convictions already final would by no means certainly have resulted in acquittals; rather it would have led to holding, or attempting to hold, hosts of new trials, in many instances long after the event. Refusal to apply *Freeman* on collateral attack thus in no way requires us to decide that a man as to whom, as we now know, the Government failed to establish an essential element of the crime charged and who did everything possible to use his appellate remedies must be forever branded as a criminal because

---

**6.** We did note our agreement with the Fifth Circuit in *Thevis, supra*, 484 F.2d at 1154, that the Supreme Court, in vacating and remanding in *Miller, supra*; Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); Kaplan v. California, 413 U.S. 115, 93 S.Ct. 2680, 37 L.Ed.2d 492 (1973); United States v. 12 200-Ft. Reels of 8mm. Film, 413 U.S. 123, 92 S.Ct. 2665, 37 L.Ed.2d 500 (1973); United States v. Orito, 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973); and in nearly 60 other cases by *per curiam* decisions four days later, intended merely that "all obscenity cases which had not reached final adjudication should be reexamined in light of its clarification of previous standards and its declaration of new standards" and not that convictions final before *Miller* were subject to reconsideration in light of it. 498 F.2d at 935. However, in light of the fact that *Miller* reduced the Government's burden in obtaining obscenity convictions, our failure to find retroactive application on collateral attack by a defendant is hardly surprising. Moreover, in *Alexander*, unlike this case, application of the subsequent Supreme Court decision to convictions that had become final would have resulted not in an acquittal but in a new trial.

his federal trial occurred in New York in 1969 rather than in Kentucky in 1971. Travers, to be sure, engaged in criminal conduct, but not in the crime for which he was convicted. *Cf.* United States v. Liguori, *supra*, 438 F.2d at 669–70.

The order is reversed, with instructions to grant the petition.