UNITED STATES of America, Plaintiff,

v.

Stephen T. GORNY, Defendant.

No. 82 CR 389.

United States District Court,
N.D. Illinois, E.D.

Nov. 25, 1987.

Brandley Lerman, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Patrick Tuite, Chicago, Ill., for defendant.

### Memorandum

LEIGHTON, Senior District Judge.

Defendant Stephen T. Gorny moves for a writ of error *coram nobis* to vacate his convictions in No. 82 CR 389. A jury returned verdicts that found him guilty of mail fraud, racketeering, and obstruction of a criminal investigation. He supports his motion with a memorandum that refers to facts in the record and to case law which he contends is dispositive. The govern-

ment opposes the motion, arguing that Gorny misconstrues the facts of his case and the case law on which he relies.

The court has given careful consideration to defendant's motion and the government's objections. It has reviewed the record which consists of a superseding indictment, transcripts containing the opening statements of counsel, the evidence heard by the jury, the closing arguments, jury instructions, pretrial and post-trial proceedings. From this consideration and review, the court concludes that defendant's motion must be granted. Therefore, it vacates his convictions and orders his record expunged. The reasons for these rulings are as follows.

## I

Defendant was tried by a jury and found guilty of ten counts of mail fraud, one count of racketeering, and one count of obstruction of a criminal investigation. Each mail fraud count charged that "Stephen T. Gorny ... devised and intended to devise and participated in a scheme to defraud":

a. The Board of Appeals and the citizens of Cook County of their right to the loyal, faithful and honest services of defendant STEPHEN T. GORNY in the performance of acts related to his public employment;

b. Cook County and its citizens, its public officials, and its public employees of their right to have the business of the Board of Appeals conducted honestly, fairly, impartially, free from corruption, collusion, partiality, dishonesty, bribery and fraud; and

c. Cook County and its citizens of their right to have real estate property taxes assessed and collected free from the influence of corruption, collusion, partiality, dishonesty, bribery and fraud.

The theory of the government's mail fraud charges, as expressed in the opening statement and closing arguments of government counsel, the evidence, and the instructions to the jury, was that defendant had devised and participated in a scheme to defraud the Board of Appeals and the citizens of Cook County of their right to have their business and affairs conducted honestly, impartially, and free from fraud. After hearing and denying post-trial motions, this court sentenced defendant; he appealed, and the court of appeals affirmed his convictions. 732 F.2d 597. He has served his sentence and been discharged from these proceedings. The clerk of this court has treated this record as one of a closed case. This would have remained its status except for a recent development in the law of federal crimes, particularly the law of mail fraud.

On June 24, 1987, the Supreme Court decided *McNally v. United States*, —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 in which it held that

[t]he mail fraud statute clearly protects property rights, but does not refer to the intangible right of the citizenry to good government.

—— U.S. at ——, 107 S.Ct. at 2879. And relying on one of its earlier cases, the Court stated that

The words "to defraud" commonly refer "to wronging one in his property rights by dishonest methods or schemes," and "usually signify the deprivation of something of value by trick, deceit, chicane or over-reaching."

—— U.S. at ——, 107 S.Ct. at 2880, 2881. It ruled that the mail fraud statute does not prohibit schemes to defraud citizens of their intangible rights to honest and impartial government. —— U.S. at ——, 107 S.Ct. at 2882. This ruling revealed to defendant, and to many others, that the acts for which he was indicted, arrested, prosecuted, convicted and sentenced, were not crimes of mail fraud, *McNally*, supra at 2882.

Defendant's motion for a writ of error *coram nobis* to vacate his convictions in 82 CR 389 is based on *McNally*. He argues that the mail fraud convictions should be set aside because they were for acts which, under the doctrine of that case, are not within the mail fraud statute. He insists that here, as in *McNally*, his convictions were based on an alleged scheme to de-

fraud a board and the citizens of a county of their right to honest and impartial government. Defendant points to the fact that a near unanimous Supreme Court has held that Congress, from inception of the mail fraud statute, intended that law to apply only to those instances involving transgressions against money or property. It follows, according to defendant, that because it was not unnecessary for the jury to have found that the scheme with which he was charged resulted in either the Board of Appeals or the citizens of Cook County being deprived of money or property, his mail fraud convictions were invalid. Therefore, he asks that these convictions, as well as the ones for racketeering and obstruction, be vacated.

## II

The government opposes defendant's motion, arguing that the mail fraud convictions are proper even in light of *McNally*. It contends that deprivation of a public employer's right of control of its agents as recognized by state law constitutes a deprivation of something of value, a right of control to which the public employer is legitimately entitled and hence an infringement of property within the scope of the mail fraud statute. Thus the proper question, after *McNally*, is not whether the right is tangible, but rather, whether it is a property right of which one can be defrauded. Accordingly, the government argues that the rights of which the Board and the citizens of Cook County were deprived are not merely abstract but are property interests recognized by the law of agency.

The factual and legal theories of these arguments, being ingenious and original, are stated by the government for the first time in these post-conviction proceedings. They were not charged in the indictment; they are not reflected in the opening statement or closing arguments of government counsel; they were not supported by evidence offered as such; nor was the jury given any instruction consistent with them. For these reasons this court is constrained to agree with defendant that the government now charges conduct, said to have been criminal, but which was not so de-

scribed in the prosecution of the case against him.

## III

It is well established that "[t]o uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process." *Dunn v. United States*, 442 U.S. 100, 106, 99 S.Ct. 2190, 2194, 60 L.Ed.2d 743 (1979); *see Eaton v. Tulsa*, 415 U.S. 697, 699, 94 S.Ct. 1228, 1230, 39 L.Ed. 2d 693 (1974) (*per curiam*); *Garner v. Louisiana*, 368 U.S. 157, 163–64, 82 S.Ct. 248, 251–52, 7 L.Ed.2d 207 (1961). Therefore, when a criminal conviction is sought to be upheld, due process of law requires that the theory for upholding it be set forth in both the indictment and the case presented to the jury. *Dunn*, 442 U.S. at 106, 99 S.Ct. at 2194. This is because "in addition to notice, due process requires a trial in which criminal defendants are able to confront the government's case." *Cola v. Reardon*, 787 F.2d 681, 696 (1st Cir.1986).

■ Here, in the prosecution of defendant, the government's case was that he had devised and intended to devise a scheme to defraud the Board of Appeals and the citizens of Cook County of their intangible rights to clean and honest government. It was not charged in the indictment nor stated in the case presented to the jury, that he had devised a scheme to defraud his public employer of its right to control him as an agent, a right recognized by state law and constituting a property interest within the scope of the mail fraud statute. If this court were to sustain the argument the government now makes in this case, its ruling would be offensive to the most basic notions of due process. "Few constitutional principles are more firmly established than a defendant's right to be heard on the specific charges of which he is accused." *Dunn v. United States*, 442 U.S. 100, 106, 99 S.Ct. 2190, 2194, 60 L.Ed.2d 743 (1979). The government's arguments and the theory they reflect cannot be sustained. Defendant's conduct as charged in the indictment and presented to the jury was not a

crime under the mail fraud statute. *McNally v. United States,* — U.S. —, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Consequently, his motion for a writ of error *coram nobis* to vacate the convictions on ten counts of mail fraud must be granted, *United States v. Travers,* 514 F.2d 1171, 1178 (2d Cir.1974); *cf. Ingber v. Enzor,* 664 F.Supp. 814, 823 (S.D.N.Y.1987). This leaves the issues concerning the convictions for racketeering and obstruction of a criminal investigation.

## IV

### A

■ The count that charged racketeering alleged facts concerning the enterprise in which defendant was associated and then stated that he engaged in a pattern of racketeering activity consisting of multiple acts of mail fraud and multiple acts of bribery in violation of Illinois law. One of the elements which the government had to prove to the jury was that defendant participated in the conduct of the enterprise's affairs through the pattern of racketeering activity alleged in the indictment. *United States v. Sinito,* 723 F.2d 1250, 1260 (6th Cir.1983). However, the pattern of racketeering activity which the government charged in the indictment, and presented to the jury, consisted of acts which, under *McNally v. United States,* — U.S. —, 107 S.Ct. 2875, 2882, 97 L.Ed.2d 292 (1987), were not crimes under the mail fraud statute. Therefore, under all of the fundamental rules of fairness, evidence concerning defendant's alleged violations of the mail fraud statute should not have been submitted to the jury. It was not relevant and was not admissible, Fed.R.Evid. 402; *see United States v. Allison,* 474 F.2d 286, 289 (5th Cir.1973). As a consequence, it was prejudicial. And, because the jury returned general verdicts, there is no way to tell how it was influenced by the inadmissible and prejudicial evidence.

The government argues that even assuming the mail fraud charges were invalid, proof of them as predicate acts to the RICO charge was, at most, harmless error "since there is no doubt that the jury's verdict on both RICO and mail fraud rested on its findings of bribery." However, the law requires that a verdict be set aside in a case where it is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected. *United States v. Sales,* 725 F.2d 458, 459 (8th Cir.1984); *see Yates v. United States,* 354 U.S. 298, 312, 77 S.Ct. 1064, 1073, 1 L.Ed.2d 1356 (1957).

It is true that the jury could have rested its verdict on the racketeering count solely on the evidence concerning the alleged briberies; but we do not know if it did this. There is a reasonable possibility that the jury relied, in whole or in some part, on the evidence that the government offered to support the mail fraud counts, even though, as it is now known, defendant had not committed mail fraud. *See McNally,* — U.S. at —, 107 S.Ct. at 2882. Evidence is prejudicial if there is a reasonable possibility that it might have contributed to the conviction, regardless of whether there was sufficient other evidence on which defendant could have been convicted. Therefore, submitting to the jury the pervasive and extensive evidence about mail fraud, could not have been harmless. *Fahy v. State of Connecticut,* 375 U.S. 85, 86, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). For these reasons, defendant's conviction on the racketeering count must be vacated.

### B

■ In the count that charged obstruction of a criminal investigation, the indictment alleged that FBI agents "were conducting an official investigation into possible violations of Title 18, United States Code, sections 1341 and 1962(c)...." Defendant contends that "[i]n retrospect ... this investigation was not one in reference to violation of federal laws." His point in this regard is that because the obstruction and racketeering counts were joined with counts charging mail fraud when those crimes had not been committed by him, and substantial evidence in support of the invalid counts was submitted to the jury, the entire trial was permeated and tainted by prejudicial evidence.

It is clear that the obstruction count adequately alleged an official investigation into possible violations of federal law because one of the mentioned statutes was Title 18, U.S.C., § 1962(c), a provision of RICO. But it is also clear that the government's case consisted mainly of evidence about possible violations of the mail fraud act when, in fact and as a matter of law, those offenses had not been committed by the defendant. To what extent the verdict was influenced by the inadmissible and prejudicial evidence cannot be determined since the jury's verdict was a general one. For this reason, as in the case of the racketeering count, the verdict must be set aside, *Stromberg v. California*, 283 U.S. 359, 367–68, 51 S.Ct. 532, 538, 75 L.Ed. 1117 (1931); *see Zant v. Stephens*, 462 U.S. 862, 881, 103 S.Ct. 2733, 2744–45, 77 L.Ed. 2d 235 (1983). And in this *coram nobis* motion, defendant's conviction for obstruction of a criminal investigation must be vacated. *United States v. Travers*, 514 F.2d 1171 (2d Cir.1974); *Strauss v. United States*, 516 F.2d 980 (7th Cir.1975); *Hirabayashi v. United States*, 627 F.Supp. 1445 (W.D.Wash.1986). An order will be issued vacating defendant's convictions in 82 CR 389. The ten mail fraud counts, because they were void, *ab initio*, are dismissed; and defendant's record as to them is expunged.

## V

■ This being done, the two remaining counts of the indictment are ordinarily "left in the same position as if no judgment had been given." *United States v. Harris*, 155 F.Supp. 17, 21 (S.D.Calif.1957). The matters which may be in controversy are left open for future determination or proceedings. 1 Freeman, *Treatise of the Law of Judgments*, § 302, pp. 594–95 (5th ed. Tuttle, 1925); *and see* C.J.S., § 1606(33). In this case, however, it appears that there can be no further proceedings as to the two counts as they were returned by the grand jury. The racketeering count will have to be altered by deleting all allegations concerning multiple acts of mail fraud; and the obstruction count would have to be altered to delete all references to the fact

that the official investigation was into possible violations of Title 18, U.S.C. § 1341, the mail fraud statute. These alterations, of course, would deprive defendant of the defense that the government could not prove the charges that the grand jury included in those two counts of the indictment. Those alterations would have materially amended the indictment. However, only the grand jury, not the court, can materially amend a criminal indictment. *United States v. Nicosia*, 638 F.2d 970, 976 (7th Cir.1980).

■ Moreover, beyond notice and double jeopardy, there is the distinct constitutional right, protected by the Fifth Amendment, that a defendant be tried upon charges found by a grand jury. *United States v. Camp*, 541 F.2d 737, 740 (8th Cir.1976); *see United States v. Lubomski*, 277 F.Supp. 713, 717 (N.D.Ill.1967). And, it is well established that a court may not amend an indictment by striking out words as surplusage which may have formed the bases for one or more of the grand jurors to vote to indict. *United States v. Beeler*, 587 F.2d 340, 343 (6th Cir.1978); *and see Ex Parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1987); *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). These reasons, alone, justify the conclusion that defendant cannot be held to further proceedings on the two remaining counts of the indictment. But there is a more compelling one, one that leads this court to conclude that the government should not be permitted to try defendant again on the remaining counts; and that instead, he should be discharged from these proceedings with his record expunged of the convictions in 82 CR 389.

On June 3, 1982, the clerk of this court issued a warrant commanding the United States Marshal for this district to arrest defendant and bring him "to answer to an indictment charging him with Postal Fraud." He obtained counsel, appeared in this court for arraignment, later was prosecuted, convicted and sentenced. At his trial, this court, at the government's request, informed the jury that they were required to hear evidence and decide whether de-

fendant was guilty of fifteen counts of mail fraud. After he had completed his sentence, defendant, and the rest of us, were told, by the highest court of this land that the acts on which the government had relied, and for which the jury found him guilty in ten counts, were not crimes within the mail fraud statute. *McNally*, supra — U.S. at ——, 107 S.Ct. at 2882. To state it more vividly, a near-unanimous court held in *McNally* that on the "intangible rights theory" alleged, the government had no authority in law to have procured the indictment against defendant, cause his arrest, subject him to trial, and bring about his conviction for mail fraud.

In *Terry v. State of Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Chief Justice Warren quoting from an earlier decision, said that

No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. 392 U.S. at 5 [88 S.Ct. at 1871].

It requires no oversensitivity for the dignity of the human person to see that when defendant was convicted of crimes he had not committed he was subjected to the highest form of injustice; he was denied the most elementary due process of law, all at the hands of the government of the United States. "Where there is denial of due process, there is a 'manifest injustice' as a matter of law." *United States v. Crusco*, 536 F.2d 21, 26 (3d Cir.1976). What defendant here claims as grounds for *coram nobis* relief concerning his convictions, and particularly those for mail fraud "was 'a fundamental defect which inherently results in a complete miscarriage of justice'." *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974); *see* LaFave & Isreal, *Criminal Procedure* § 27.10(6)(c) (1984).

It is true that "[a]fter 1973, courts began to permit conviction of corrupt politicians without finding a direct transfer of economic value to the politician from the popu-

lace, by finding that the citizens had been defrauded of their intangible right to fair and honest government." *United States v. Runnels*, 833 F.2d 1183, 1185 (6th Cir. 1987). But this fact only goes to demonstrate the enormity of the wrong that the United States government has been inflicting on the authority of claimed violations of the mail fraud statute. "[C]riminal conduct does not offend against the federal government unless it violates an act of Congress." *Jerome v. United States*, 318 U.S. 101, 104, 63 S.Ct. 483, 486, 87 L.Ed. 640 (1943). The federal judiciary ... "may not create crimes outright or enlarge the reach of enacted crimes." *United States v. Mandel*, 672 F.Supp. 864, 873 (D.C.Md. 1987); *United States v. Best*, 573 F.2d 1095, 1101 (9th Cir.1978) (*citing Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 249–50, 96 L.Ed. 288 (1952)). And the Supreme Court told us all, a long time ago, that "[t]he unambiguous words of a statute which impose criminal penalties are not to be altered by judicial construction so as to punish one not otherwise within its reach, however deserving his conduct may seem." *Viereck v. United States*, 318 U.S. 236, 243, 63 S.Ct. 561, 564, 87 L.Ed. 734 (1943). When the decision in *McNally* is read and understood, it becomes evident that the words "scheme or artifice to defraud" in the mail fraud statute are not ambiguous. As creditable as it may seem to some, the success of federal prosecutors in getting federal judges to expand the meaning of the mail fraud statute does not make right what was a wrong to begin with: a calamitous injustice in the name of the law. For these reasons, in the exercise of this court's jurisdiction under 28 U.S.C. § 1651, the counts that charged defendant with racketeering and obstruction of a criminal investigation are dismissed; and he is discharged from these proceedings.

So ordered.