# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 25, 2010

No. 09-40749

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SAM SMITH HILL, III,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
No. 2:08-CR-172-1

Before KING, HIGGINBOTHAM, and GARZA, Circuit Judges.

PER CURIAM:[*]

Following a jury trial, Sam Smith Hill, III ("Dr. Hill") was convicted of Medicaid fraud involving the improper billing of his assistants' work as his own. Hill challenges the sufficiency of the evidence proving that he improperly billed Medicaid and that he intended to commit fraud. He also argues that the district court abused its discretion in denying his petition for a writ of error *coram nobis*. For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-40749

**I**

Dr. Hill is a psychologist who founded a children's behavior clinic to provide mental health services for underprivileged children in the Corpus Christi area. He enrolled as a provider in the Texas Medicaid program, a federal health care benefit program, in 1996.

The Medicaid system works by reimbursing medical providers for approved services that they provide to Medicaid patients. In order for providers to receive reimbursement, they submit "superbills" to Medicaid that include Current Procedural Terminology ("CPT") codes for the medical services provided. Prior to 2006, a single CPT code, 96100, existed for all "psychological testing," which included "both face-to-face time administering tests to the patient and time interpreting these test results and preparing the report." In 2006, CPT code 96100 was discarded and replaced with code 96101 for psychological testing performed by psychologists, and 96102 for testing performed by Licensed Psychological Associates ("LPAs") and other non-psychologists. During the time period relevant to Dr. Hill's indictment, the Texas Medicaid Providers Manual stated that the work of LPAs could not be reimbursed by Medicaid or billed under a psychologist's provider identifier.

In 2008, Dr. Hill was charged with nineteen counts of health care fraud spanning from 2001 to 2008. Specifically, the indictment charged Dr. Hill with submitting fraudulent bills listing CPT codes for psychological testing performed by a psychologist when the testing had actually been performed by LPAs. A jury found Dr. Hill guilty on six of those counts, all involving Medicaid bills from 2008, and acquitted on the remaining counts. Dr. Hill was sentenced to five years' probation and six months' house arrest. He was also ordered to pay Medicaid $48,739.82 in restitution, fined $40,000, and assessed a special penalty of $600.

No. 09-40749

## II

Dr. Hill argues that the Government failed to present sufficient evidence to prove that he had improperly charged Medicaid for his LPAs' work as though it were his own, or that he intentionally defrauded Medicaid. In reviewing the sufficiency of the evidence to support a conviction, we view the evidence and the inferences that may be drawn from it in the light most favorable to the verdict and determine whether a reasonable jury could have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Martinez*, 151 F.3d 384, 388 (5th Cir. 1998).

During the relevant time, Medicaid regulations permitted psychologists to bill Medicaid only for services they provided. Although psychologists were entitled to reimbursement for testing they had performed themselves (including administration, interpretation, and reporting), they could not be reimbursed for work performed by their technicians. Dr. Hill readily admits that his technicians administered all psychodiagnostic testing on his behalf. Dr. Hill argues, however, that the hours billed to Medicaid represent time he personally spent interpreting and reporting on the results of these tests, and not the time the LPAs spent administering the tests.

There is sufficient evidence from which the jury could conclude that the billing included the LPAs' time. First, the timing of the superbills greatly undermines Dr. Hill's theory that he only billed for his time in interpreting the results before meeting with the patients. That is, the bills were submitted right after the testing occurred, and several weeks before Dr. Hill reviewed the results in anticipation of his meeting with the patients to discuss the results. Two of Dr. Hill's LPAs testified that after administering tests, they immediately gave superbills showing which tests had been administered to a clerk at the front desk prior to any interpretation by or consultation with Dr. Hill. Dr. Hill's billing agent testified that she sent the information from these superbills to

3

Medicaid, making compensation claims under Dr. Hill's CPT code on the basis of the "predetermined" number of hours each test took. It is difficult to understand how the billing could be predetermined if it were for Dr. Hill's interpretation of the results, which could take any number of hours, rather than the actual testing, which required a set amount of time. Given this evidence, the jury was not unreasonable in concluding that Dr. Hill billed for the LPAs' time.

Dr. Hill also argues that the Government did not present sufficient evidence to prove that he intentionally defrauded Medicaid. In order to prove health care fraud under 18 U.S.C. § 1347, the Government must prove that a defendant "knowingly and wilfully executes, or attempts to execute a scheme or artifice" to defraud a health care benefit program––that is, the law requires a finding of specific intent. *United States v. Hickman*, 331 F.3d 439, 443–45 (5th Cir. 2003).

The Government's primary evidence of specific intent came from the testimony of Agent Daniel Sanchez, an investigator for the Office of the Attorney General, Medicaid Fraud Control Unit; and FBI Special Agent Andrew Walton, both of whom interviewed Dr. Hill. Agent Sanchez testified that Dr. Hill told the agents that he knew he was violating Medicaid billing rules, but that the rules were "wrong and immoral." Agent Sanchez also testified that Dr. Hill stated that he would continue to violate Medicaid's billing rules unless prosecuted, at which point he "would stand by his decision and accept whatever consequence came his way." Agent Walton testified that Dr. Hill said that he knew he was in violation of the rules and knew that his practice of billing for testing services of his assistants was prohibited by Medicaid rules. According to Agent Walton, Dr. Hill believed he was not being compensated for his time and that the Medicaid rules were "immoral." This testimony was sufficient for a reasonable jury to conclude that Dr. Hill acted with the requisite specific intent to defraud Medicaid.

No. 09-40749

### III

Dr. Hill argues that the district court abused its discretion in denying his petition for a writ of error *coram nobis*. In reviewing a district court's denial of a petition for a writ of error *coram nobis*, "we review factual findings for clear error, questions of law de novo, and the district court's ultimate decision to deny the writ for abuse of discretion." *Santos-Sanchez v. United States*, 548 F.3d 327, 330 (5th Cir. 2008).

A writ of error *coram nobis* "is an extraordinary remedy available to a petitioner no longer in custody" used "to correct errors 'of the most fundamental nature.'" *United States v. Esogbue*, 357 F.3d 532, 534–35 (quoting *United States v. Morgan*, 346 U.S. 502, 512 (1954)). For an error to be of sufficient magnitude to justify a writ of error *coram nobis*, the appellant must prove that the errors "result[ed] in a complete miscarriage of justice." *Jiminez v. Trominski*, 91 F.3d 767, 768 (5th Cir. 1996).

In 2009, after Dr. Hill's indictment and conviction, the Texas Medicaid Providers Manual was changed to allow partial reimbursement for the work of LPAs under certain circumstances. Dr. Hill argues that changes in the law that allow psychologists to charge Medicaid for the work of LPAs subsequent to his conviction undermine the validity of his conviction and justify a writ of error *coram nobis*. However, the cases he cites in support of his petition involve laws that were later declared unconstitutional,[1] or a determination that the defendant's conduct was not criminal under the statute forming the basis for the prosecution.[2] Here, the changes in Medicaid rules reflect a policy decision by

---

[1] *See United States v. Travers*, 514 F.2d 1171, 1176–77 (2d Cir. 1974) (statute subsequently declared unconstitutional); *United States v. Summa*, 362 F. Supp. 1177, 1179–80 (D. Conn. 1972) (same); *United States v. Houssein*, 326 F. Supp. 1194, 1199 (D. Md. 1971) (same); *Angelini v. United States*, 322 F. Supp. 698, 699 (N.D. Ill. 1970) (same).

[2] *See United States v. Marcello*, 876 F.2d 1147, 1154 (5th Cir. 1989) (conduct subsequently held not to be criminal under the statute used to prosecute the defendant);

5

No. 09-40749

Medicaid rather than a judicial finding of unconstitutionality; therefore, those authorities are inapposite. Moreover, Dr. Hill's actions would still have been illegal under Medicaid's new billing regulations. The change to the Texas Medicaid program stated that an LPA's work, done under the supervision of a psychologist, can only be billed at 70% of the psychologist's payment rate, not the full amount that Dr. Hill was charging for his LPAs' work. Dr. Hill has failed to show that his case presents a complete miscarriage of justice sufficient to meet the high burden required for the issuance of a writ of error *coram nobis*. Accordingly, the district court's denial of Dr. Hill's petition was not an abuse of discretion.

## IV

For the foregoing reasons, we AFFIRM.

---

*United States v. Travers*, 514 F.2d 1171, 1175 (2d Cir. 1974) (same); *United States v. Sawyer*, 74 F. Supp. 2d 88, 105–06 (D. Mass. 1999) (same).