The **UNITED STATES** of America, Plaintiff-Appellee,

v.

**Robert S. STRAUSS**, Defendant-Appellant.

No. 18890.

United States Court of Appeals, Seventh Circuit.

Sept. 15, 1971.

Rehearing Denied Oct. 14, 1971.

Certiorari Denied March 20, 1972.
See 92 S.Ct. 1252.

Wayne B. Sig Giampietro, Chicago, Ill., for defendant-appellant.

Donald B. Mackay, U. S. Atty., Gregory M. Wilson, Asst. U. S. Atty., Springfield, Ill., for plaintiff-appellee.

Before KILEY and CUMMINGS, Circuit Judges and CAMPBELL, Senior District Judge.*

CAMPBELL, Senior Judge.

The defendant, Robert S. Strauss, was indicted jointly with one Thaddeus M. Ohrynowicz for participation in a check-kiting scheme involving some twelve banks located in Illinois. Strauss was tried alone before a jury and was found guilty on five counts of mail fraud in violation of 18 U.S.C. §§ 1341,

* Senior District Judge Campbell of the Northern District of Illinois is sitting by designation.

1342. Judgment of conviction was entered upon the verdict and consecutive sentences [1] totaling eight years were imposed.

Except for the defendant's claim that the government failed to establish beyond a reasonable doubt a use of the mails by the defendant in furtherance of the alleged scheme to defraud, the sufficiency of the evidence is not challenged on appeal. Thirty-six witnesses testified and each of them, in varying degrees, implicated the defendant in the check-kiting scheme. The defendant did not testify or otherwise present any evidence on his own behalf. In addition to the question regarding the use of the mails, the defendant also contends that he was denied his constitutional right to a speedy trial and that the district court erred in denying his motion to suppress certain articles seized from the automobile of Thaddeus Ohrynowicz and introduced into evidence during the defendant's trial. Another ground for reversal urged by the defendant is the claim that the indictment did not adequately charge an offense under 18 U.S.C. § 1341.

The offenses charged in the indictment were allegedly committed during a period from September 1, 1967 to approximately September 15, 1967. The defendant's arrest by State authorities followed almost immediately as did his return to the custody of the United States Marshal. His parole on a prior federal sentence was revoked and the defendant was returned to the United States penitentiary at Terre Haute, Indiana. The indictment in this cause was not filed until September 19, 1968, slightly more than one year after the commission of the offenses. A detainer was then immediately lodged against the defendant at the place of his incarceration. Approximately another year later the defendant was brought to Springfield, Illinois and arraigned on the charges contained in the indictment. The motion to dismiss, based on Rule 48(b) [2] and the sixth amendment right to a speedy trial, was not made until about five months after arraignment. The trial commenced some three months later.

Arguing that he was prejudiced by the "unnecessary" one year delay in presenting the charge to the grand jury, the defendant contends that the district court erred in denying his motion to dismiss. He also claims that the post indictment delay of approximately one and one-half years deprived him of his right to a speedy trial. In determining whether the constitutional assurance of a speedy trial has been breached, consideration must be given to the length of the delay, the reasons for the delay, the reasonable possibility of prejudice to the accused, and whether the accused can be said to have waived the right. United States v. Perez, 398 F.2d 658 (7th Cir. 1967). With particular reference to pre-indictment delays, this Circuit has adopted the rule that the trial court should dismiss the indictment only if the accused can demonstrate that he has been prejudiced by the postponement. United States v. Lee, 413 F.2d 910, 913 (7th Cir. 1969); United States v. Hauff, 395 F.2d 555, 557 (7th Cir. 1968). Only where some evidence of prejudice has been presented is a burden placed on the government to explain the delay. Here, no prejudice, other than by way of general assertion, is even

---

1. On each of the counts charging violations of 18 U.S.C. § 1341 the defendant was sentenced to five years, the sentences to run concurrently. On each of the counts charging violations of 18 U.S.C. § 1342 the defendant was sentenced to three years, the sentences to run concurrently. The five year sentences and the three year sentences were ordered to run consecutively, for a total sentence of eight years.

2. Rule 48(b), F.R.Crim.Proc., provides: "If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint."

claimed by the defendant. It is not argued, for example, that the passage of time dimmed the memories of the witnesses or caused the disappearance of any possible witnesses for the defendant. No claim is made that the defendant was embarrassed or hindered in the preparation of his defense. The assertion that the possibility of a concurrent sentence with the defendant's prior sentence was lost as a consequence of the delay must be viewed as conjectural, if not frivolous, in light of the imposition of consecutive sentences in the case.

■ Although no prejudice has been shown here, the government nevertheless commendably offers an explanation for the delay. Prior to indictment, the government represents that much time was necessary to enable the Post Office Inspectors to investigate the facts and to gather evidence for presentation to the grand jury. Since the alleged scheme involved twelve banks located in four different Illinois towns and since there were numerous potential witnesses, it seems that the investigatory pre-indictment delay is a satisfactory explanation by the government. United States v. Feinberg, 383 F.2d 60, 64–65 (2nd Cir. 1967). We are not dissuaded from this conclusion by the defendant's gratuitous argument that since his prior federal parole was revoked so shortly after his arrest, facts sufficient to indict the defendant must also have been then available to the United States Attorney, thus rendering any delay "unnecessary." In this respect, what was said in United States v. Feinberg, 383 F.2d 60 at 67 (2nd Cir. 1967) is applicable here:

"It would be unwise to impose upon the judiciary the inquisitorial function of scrutinizing the internal operations of law enforcement agencies when no possible prejudice to the accused has been shown."

■ Concerning the post-indictment delay of approximately a year and one-half, the government submits that the delay is attributable only to its desire to try the defendant with Thaddeus Ohrynowicz who was jointly indicted with him and who was a fugitive during this period. Indeed had the government waited but two months longer, when Ohrynowicz was finally apprehended, the two men could have been tried jointly. Considering the absence of any demonstrated prejudice as well as the intricate involvement of both men in the alleged scheme to defraud and the interest of prosecuting both men at the same time, we believe this explanation to be reasonable. Thus, the district court did not err in refusing to grant the defendant's motion to dismiss the indictment on these grounds.

The defendant next argues that it was error for the district court to deny his motion to suppress certain articles seized from the automobile of Thaddeus Ohrynowicz and later introduced during his trial. The material seized consisted of numerous checks, deposit tickets and receipts in the names of various accounts with Illinois banks, a check protector and a typewriter. It is contended that at the time of Ohrynowicz' arrest and the subsequent search of the vehicle, the police were not armed with sufficient factual information to support a finding of probable cause for arrest without a warrant. No challenge to the scope of the search is made and we therefore must confine our inquiry to the question of whether probable cause was present when the vehicle was searched.

The record discloses that on September 13, 1967, Detective William Ascher of the Springfield Police Department was summoned to the Capitol Bank in Springfield and there spoke with Thomas Stephens, a bank official. The detective was informed that the Bank had been victimized by a checking account scheme wherein several days previously an individual, later identified as the defendant, came into the Bank and opened a checking account with a $500.00 cash deposit. A day later the defendant returned, deposited a check and withdrew the original deposit. The following day,

September 13, 1967, the defendant attempted to deposit another check and with it attached a cash-out (*i. e.*, withdrawal) ticket in the amount of $900.00. Because the check deposited by the defendant on the second day had been dishonored, Mr. Stephens informed the defendant that the Bank could not allow him to withdraw any additional funds from his account. He then hurriedly departed the Bank. Through the assistance of a customer of the Bank who had seen the defendant and another man speed away from the Bank in a car, Mr. Stephens was able to give Detective Ascher a description of the two men and the automobile, as well as the vehicle's license number. This information as well as the nature of the scheme was then communicated to police headquarters and broadcast over their radio system. When Detective Ascher contacted his office he was informed that one of the men he had described had been arrested at the First National Bank of Springfield for his suspected involvement in the same type of scheme to defraud. Ascher was also told by his office that two other Springfield banks had reported the occurrence of similar frauds earlier that morning. A short time later the detective was notified that the car in question was seen in downtown Springfield parked and unoccupied in the vicinity of another bank. After proceeding to this area, the detective, in the company of other police officers, observed Thaddeus Ohrynowicz enter the automobile and commence to drive away. The officers then stopped the car, placed the driver under arrest, and searched the vehicle, discovering the materials later introduced at defendant's trial.

■■ We agree with the defendant that the standard for reviewing a police officer's assessment of probable cause prior to a warrantless arrest should be no less stringent than that employed by a court in reviewing a magistrate's determination prior to the issuance of a warrant. Whitely v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971);

Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). We find that the circumstances here justify such a finding of probable cause. The motion to suppress was properly denied.

■ The sufficiency of the indictment to charge an offense is next challenged in two respects. First, it is contended that the indictment is fatally defective because it fails to name the victims or the intended victims of the alleged offense. A second defect is raised through the contention that a use of the mails by the defendant was not charged in the indictment. Neither contention has merit. With regard to whether the "victims" of the scheme were named, the indictment, following a thorough description of the nature of the check manipulation procedure, sets out the names of twelve banks at which checking accounts were opened. Although the descriptive word "victim" is not used, a reasonable construction of the indictment, considered as a whole, leads to the conclusion the banks named were indeed the intended "victims" of the fraud. The indictment adequately apprised the defendant of the nature of the charge against him and was sufficient to permit the defendant to plead the judgment as a plea in bar to a subsequent prosecution for the same offense. See Collins v. Markley, 346 F.2d 230 (7th Cir. 1965).

■ Concerning the claim that a use of the mails was not alleged, we observe that most of the defendant's argument on this point is directed to the government's evidence of mailing, rather than to the sufficiency of the allegations contained in the indictment. The indictment alleges that "for the purpose of executing the aforementioned scheme and artifice to defraud and attempting to do so" the defendant "caused to be mailed" by certain of the named banks "advice letters" (bank collection letters) transmitting checks signed by the defendant under fictitious names and drawn on another of the named banks. Both the drawee banks and the banks transmit-

ting the advice letters were specifically identified. Clearly the use of the mails and the relationship of these mailings to the fraudulent scheme was set forth in the indictment. The defendant's "causing" the use of the mails was also stated. That this was done "knowingly" by the defendant is adequately charged by the phrase " 'for the purpose of executing' the scheme." United States v. Richman, 369 F.2d 465, 467 (7th Cir. 1966). The defendant's suggestion that the indictment did not allege that advice letters contained any misrepresentations is without merit since it is not necessary that the false representations were themselves transmitted by mail. Anderson v. United States, 369 F.2d 11 (8th Cir. 1966), cert. denied 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136; United States v. Hopkins, 357 F.2d 14 (6th Cir. 1966), cert. denied 385 U.S. 858, 87 S.Ct. 107, 17 L.Ed.2d 84. We find that the indictment here was proper.

■ Lastly, defendant argues that the government failed to meet its burden of proving a use of the mails, particularly in that the government's proof did not show that defendant did anything to "cause" the use of the mails and that any mailing which did occur was not an integral part of the scheme to defraud because the alleged mailings took place only after the completion of the scheme. The Supreme Court has disposed of this argument in its opinion in Pereira v. United States, 347 U.S. 1, 8–9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1953) wherein it stated:

> "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, *or where such use can reasonably be foreseen, even though not actually intended,* then he 'causes' the mails to be used." [Emphasis added] See also United States v. Lowe, 115 F.2d 596, 598–599 (7th Cir. 1940).

Measuring the defendant's acts by this standard, it can readily be seen that the defendant caused the mails to be used. The defendant together with his accomplice opened checking accounts in twelve banks located in four different cities. Although, it was not the normal practice of these banks to utilize the mails in the bank collection process, the evidence shows the practice of sending advice letters through the mails was not an isolated one and could reasonably have been anticipated under the circumstances. United States v. Brickey, 426 F.2d 680 (8th Cir. 1970); United States v. McConahy, 294 F.Supp. 1 (E.D.Wis.1969).

■ Relying on Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L. Ed.2d 1277 (1960), Kann v. United States, 323 U.S. 88, 65 S.Ct. 148, 89 L. Ed. 88 (1944), and Dyhre v. Hudspeth, 106 F.2d 286 (10th Cir. 1939), the defendant contends that the fraudulent scheme was complete upon presentation and payment of the insufficient funds checks and that therefore the mailings occurred after completion of the scheme and thus there was no violation of the mail fraud statute, 18 U.S.C. § 1341. However, the Supreme Court has also said that neither *Kann* nor *Parr* announced an inflexible rule that the use of the mails after the victims' money had been obtained can never be for the purpose of executing the fraud. United States v. Sampson, 371 U.S. 75, 80, 83 S.Ct. 173, 9 L.Ed.2d 136 (1965). Here the use of the mails "caused" by the defendant provided or contributed to a time lag which was intended to aid in avoiding detection. See United States v. Decker, 411 F.2d 306 (4th Cir. 1969); United States v. Hendrickson, 394 F.2d 807 (6th Cir. 1968). The mailing, established by the evidence, we find to have been an integral part of the scheme to defraud.

The judgment of the district court is affirmed.