**Robert S. STRAUSS,
Petitioner-Appellant,**

**v.**

**UNITED STATES of America,
Respondent-Appellee.**

No. 74–1028.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1975.

Decided May 27, 1975.

Robert S. Strauss, Chicago, Ill., Hugo E. Martz, Valparaiso University (School of Law), Valparaiso, Ind., for petitioner-appellant.

Donald B. Mackay, U. S. Atty., J. Douglas Weingarten, Asst. U. S. Atty., Springfield, Ill., for respondent-appellee.

Before FAIRCHILD, Chief Judge, and CUMMINGS and SPRECHER, Circuit Judges.

CUMMINGS, Circuit Judge.

In September 1968, petitioner Robert Strauss and Thaddeus M. Ohrynowicz were charged with a check-kiting scheme in violation of 18 U.S.C. §§ 1341 and 1342.[1] After a jury trial, petitioner was convicted on Counts II and IV under

---

1. 18 U.S.C. § 1341 provides:

 *"Frauds and swindles*

 "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

 18 U.S.C. § 1342 provides:

 *"Fictitious name or address*

 "Whoever, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341 of this title or any other unlawful business, uses or assumes, or requests to be addressed by, any fictitious, false, or assumed title, name or address or name other than his own proper name, or takes or receives from any post office or authorized depository of mail matter, any letter, postal card, package, or other mail matter addressed to any such fictitious, false, or assumed title, name, or address, or name other than his own proper name, shall be fined not more than $1,000 or imprisoned not more than five years, or both."

Section 1341 and on Counts V, VIII and X under Section 1342. The evidence against Strauss is summarized in our prior opinion affirming his conviction. United States v. Strauss, 452 F.2d 375 (7th Cir. 1971), cert. denied, 405 U.S. 989, 92 S.Ct. 1252, 31 L.Ed.2d 455. This appeal results from the district court's denial without opinion of petitioner's motion under 28 U.S.C. § 2255. We reverse.

Petitioner contends that in light of United States v. Maze, 414 U.S. 395, 94 S.Ct 645, 38 L.Ed.2d 603, it is now clear that the conduct for which he was tried and convicted violates neither Sections 1341 nor 1342. Maze held that 18 U.S.C. § 1341, the so-called mail fraud statute, did not reach a scheme to defraud where an accused obtained goods and services from motel operators through a stolen credit card, knowing that the victims would subsequently mail the sales slips to a bank which would later mail it to the lawful owner of the credit card. The Court reasoned that Maze's "scheme reached fruition when he checked out of the motel[s], and * * * he probably would have preferred to have the invoice misplaced by the various motel personnel and never mailed at all." 414 U.S. at 402, 94 S.Ct. at 649. Therefore, the Court held that the mailings were not "sufficiently closely related to Maze's scheme to bring his conduct within the statute." 414 U.S. at 399, 94 S.Ct. at 648. Strauss also contends that he was denied the constitutional right to a speedy trial. He claims that if his position as to either of these arguments is accepted, he is entitled to relief under Section 2255.

Conceding that Maze is "retroactive," the Government agrees with petitioner that a Section 2255 action will lie to attack collaterally on Maze grounds a pre-Maze mail fraud conviction, citing Davis v. United States, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109, and United

States v. Travers, 514 F.2d 1171 (2d Cir. 1974). The Government further concedes that the use of the mails proved at trial was insufficiently related to Strauss' scheme to bring his conduct within Section 1341. Therefore, the Government acquiesces in petitioner's motion for relief as to Counts II and IV charging Section 1341 violations.[2] With respect to Counts V, VIII and X charging Section 1342 violations, however, the Government makes no similar concessions.

## I. The Section 1341 Counts

■ As noted *supra*, the Government concedes that the propositions of law set forth in *Travers, supra,* relating to both the "retroactive" effect of *Maze* and the availability of collateral relief to attack pre-*Maze* convictions are correct. While such government concessions are often useful to a court, they do not, at least as to questions of law that are likely to affect a number of cases in the circuit beyond the one in which the concessions are made, relieve this Court of the duty to make its own resolution of such issues. Thus we proceed to a determination of the legal issues largely independently of the Government's concessions.

## A. Retroactive Effect of Maze

In examining the effect of a Supreme Court decision that, in effect, declares the prior interpretation of a statute by a circuit in error, it is useful to note the characterization of the phrase "the law of the circuit" suggested by Judge Friendly in *Travers, supra:*

"The Government urges in effect that *Maze* was indeed an overruling decision in that it changed 'the law of the circuit'—indeed of several. But reliance on the quoted expression, of rather recent vintage, which is only a short-hand way of saying that the views of a court of appeals on an issue of federal law may remain undis-

2. In Count II it was alleged that Strauss and Ohrynowicz caused a Decatur, Illinois, bank to mail an "advice letter" on September 12, 1967, to a Springfield, Illinois, bank transmitting a worthless check dated September 11, 1967.

Similarly, Count IV alleged that Strauss and Ohrynowicz caused a Springfield bank to mail an "advice letter" on September 13, 1967, to a Normal, Illinois, bank transmitting another worthless check, dated September 12, 1967.

turbed for a long time, can lead to dangerously wrong results. There are not eleven omnipresences of federal law brooding over various portions of the United States; in the long run there is only one, although some time may be needed to reveal it." (At 1174, n. 4.)

A similar view was expressed by this Court in Gates v. United States, 515 F.2d 73 at 78 (7th Cir. 1975), where in reference to a Supreme Court decision which settled a split among the circuits as to the meaning of a statute (rejecting the interpretation adopted by this Court), Judge Hastings stated:

"The decision of the Court in [Warden v. Marrero, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383] interpreting the 1970 Comprehensive Drug Abuse Prevention and Control Act was a declaration of what the law had meant from the date of its effectiveness onward. United States v. Estate of Donnelly, 397 U.S. 286, 294–295, 90 S.Ct. 1033, 25 L.Ed.2d 312 (1970). A statute does not mean one thing prior to the Supreme Court's interpretation and something entirely different afterwards."

Both *Gates, supra,* and *Travers, supra,* rely upon the opinion of this Court in Brough v. United States, 454 F.2d 370 (7th Cir. 1971). In *Brough* petitioner sought to attack his selective service conviction in a Section 2255 proceeding. *Brough* argued that a decision of the Supreme Court, which had been handed down after his appeal had been rejected, had shown the interpretation by this Court of the allegedly violated statute to be erroneous. In the opinion granting the relief sought, the Court stated:

"To apply [Toussie v. United States, 397 U.S. 112, 90 S.Ct. 858, 25 L.Ed.2d 156] prospectively only would indicate that a federal statute duly enacted by Congress could mean one thing prior to the Supreme Court's interpretation and something entirely different afterwards. Here the relationship of

§ 3282 to §§ 462 and 453 had never been considered by the Supreme Court prior to *Toussie*. Nevertheless, a statute, under our system of separate powers of government, can have only one meaning. An interpretive rule, such as 32 C.F.R. § 1611.7(c), concerning that statute is either consistent with the statute or inconsistent. If inconsistent, as the Supreme Court found in *Toussie*, then the prior interpretation is, and always was, invalid. It necessarily follows that *Toussie* should have retroactive application in the case at bar.

\* \* \* \* \* \*

"In sum, the doctrine of retroactivity has been developed in cases dealing with criminal proceedings where new *constitutional* procedural protections had been announced. [Citations omitted.]

"We conclude that the standards thus far developed for applying new constitutional protections prospectively only have no application in the instant appeal to the *statutory* interpretation by the Supreme Court." (Emphasis in the original, 454 F.2d at 372–373.)

■ Our evaluation of these cases leads us to accept Judge Friendly's position that Section 1341 has always had the meaning given it by the Supreme Court in *Maze*. Thus we hold with the Second Circuit that *Maze* must be applied "retroactively." Consequently, the rationale of affirmance in petitioner's direct appeal was in error.

B. *Availability of Collateral Relief*

■ In Davis v. United States, *supra,* the Supreme Court recognized that a petitioner under 28 U.S.C. § 2255 need not allege a constitutional violation to challenge his sentence successfully. 417 U.S. at 342–346, 94 S.Ct. 2298. Thus in accord with the language of Section 2255, a claim is cognizable thereunder if grounded in the "laws," as well as in the Constitution, of the United States.[3] The

---

**3.** We need not reach the question whether petitioner's claim that he was sentenced for conduct that did not violate the statutes charged

could be viewed as a constitutional or jurisdictional claim.

opinion in *Davis* is careful to note that not every asserted error of law is cognizable under Section 2255, 417 U.S. at 346, 94 S.Ct. 2298. Referring to Hill v. United States, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417, the Court stated in *Davis:*

> "We suggested [in *Hill*] that the appropriate inquiry was whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether '[i]t * * * present[s] exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent.' * * * The Court did not suggest that any line could be drawn on the basis of whether the claim had its source in the Constitution or in the 'laws of the United States.'
>
> "In this case, the petitioner's contention is that the decision in Gutknecht v. United States [396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532], as interpreted and applied by the Court of Appeals for the Ninth Circuit in [United States v. Fox, 454 F.2d 593 (9th Cir. 1971)] after his conviction was affirmed, establishes that his induction order was invalid under the Selective Service Act and that he could not be lawfully convicted for failure to comply with that order. *If this contention is well taken, then Davis' conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance 'inherently results in a complete miscarriage of justice' and 'present[s] exceptional circumstances' that justify collateral relief under § 2255.* Therefore, although we express no view on the merits of the petitioner's claim, we hold that the issue he raises is cognizable in a § 2255 proceeding." (Empha-

sis added, 417 U.S. at 346–347, 94 S.Ct. at 2305.)

 Since we agree with the Government and petitioner that the mailings proved at trial were not sufficiently closely related to the purpose of the scheme to constitute a violation of Section 1341 under *Maze*,[4] petitioner's "conviction and punishment are for an act that the [federal] law does not make criminal." Therefore, there can be no room for doubt that *Travers* is correct in holding Section 2255 applicable to a situation like that of the petitioner.[5] Accordingly, the district court must be instructed to grant the petition with respect to the counts involving Section 1341.[6]

## II. *The Section 1342 Counts*

The Government asserts that the Section 1342 counts should be upheld. In its brief, the Government argues:

> "The acts charged in these counts were the acts of the defendant Strauss opening up an account in 3 different banks under false names and false addresses. The defendant used these false names and addresses to lead the bank to believe that he could be contacted by mail. This false belief was the basis for the banks opening accounts for the defendant Strauss under the false name and address. Without this false belief, the checkkiting scheme could have proceeded no further." (Government Brief at 10.)

The quoted paragraph is virtually the entire argument made by the Government for distinguishing Section 1342 from 1341 on the facts of this case.

As summarized by the Government, the evidence with respect to Count V disclosed that on September 12, 1967, Strauss opened a checking account at the National Bank of Bloomington, Illinois,

---

**4.** See discussion of the lack of sufficient connection at 985, *infra.*

**5.** Note the discussion of the ramifications of *Davis* with respect to pre-*Maze* convictions in Justice Rehnquist's dissent in *Davis.* 417 U.S. at 365–366, 94 S.Ct. 2298.

**6.** Since petitioner appealed his conviction, we are not presented with the problem suggested

by Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982, which is discussed in *Travers, supra* at 1176–1177. Because this is not a case where appeal was foregone by the petitioner, we, unlike the Second Circuit, express no opinion on the availability of Section 2255 relief, in light of *Maze*, to those persons who did not perfect an appeal from their convictions under Sections 1341 or 1342.

under the false names of Jack Gold and Gold Discount Company, 530 North Center Street, Bloomington, Illinois. The address was not that of Strauss nor that of Jack Gold. Strauss was told that check orders would be placed by mail, and the bank ordered checks from Deluxe Check Printers, Inc. in Chicago, but they were later found to be undeliverable at the address given by Strauss.

As to Count VIII, the evidence showed that petitioner opened a checking account at the Millikin National Bank in Decatur, Illinois, under the false name of Jack Gold and World Trading Company, 143 East Prairie, Decatur, again resulting in checks being ordered from Deluxe. The address given by petitioner was not that of Strauss, Gold or World Trading Company.

Finally, the evidence under Count X showed that an individual opened an account at the First National Bank, Springfield, Illinois, under the name of Gold Discount Company, with the account card being signed by Jack Gold as sole owner. The address given was 509 East Jefferson Street in Springfield, and checks were ordered from the bank's check-printing department in Springfield without using the mails.

For conviction, Section 1342 requires that a person must use or assume a fictitious name or address and must have "the purpose of conducting, promoting, or carrying on *by means of the Postal Service*, any scheme or device mentioned in section 1341 of this title or any other unlawful business * * *" (emphasis supplied). The statute applies only when the prosecution has established this purpose. United States v. Frank, 494 F.2d 145, 154 (2d Cir. 1974). The Government does not dispute that any receipt of funds by Strauss occurred before the three banks used the mails, nor is it asserted that any of the checks ordered for the fictitious accounts through the mails or otherwise were used in the check-kiting scheme.

■ Sections 1341 and 1342 have accompanied each other in the statute books through a number of revisions.[7] One court has expressed difficulty in ascertaining what advantage the Government gains by adding counts under Section 1342 to those under Section 1341. United States v. Frank, *supra* at 154 (Friendly, J.). Thus it is clear that the two statutes are closely related beyond simply being juxtaposed in the United States Code.[8]

■ In this case the Government has given us no reason to treat Section 1341 differently from Section 1342 with respect to the relation to the mails element. *Travers*, with which the Government agrees in large part, apparently treated the Section 1341 and 1342 counts in exactly the same way. The Second Circuit opinion notes that *Travers* attacked the Section 1342 convictions, as well as the Section 1341 convictions, on *Maze* grounds. Yet in ordering relief on all counts, no separate mention is given to Section 1342. We agree with the view apparently adopted by the Second Circuit in *Travers*[9] that the "by means of the Postal Service" language in Section 1342 requires the same connection between the use of the mails and the scheme that was found necessary for Section 1341 violations in *Maze*.

■ Even assuming the Government to be correct in contending that petitioner "used the false names and addresses to lead the bank to believe that he could be contacted by mail," the actual use of the mails was not sufficiently closely re-

**7.** As to 18 U.S.C. § 1341, see 18 U.S.C. 1940 ed., § 338 (Mar. 4, 1909, c. 321, § 215, 35 Stat. 1130 [derived from R.S. § 5480; Mar. 2, 1889, c. 393, § 1, 25 Stat. 873] ). As to 18 U.S.C. § 1342, see 18 U.S.C. 1940 ed., § 339 (Mar. 4, 1909, c. 321, § 216, 35 Stat. 1131 [derived from Mar. 2, 1889, c. 393, § 2, 25 Stat. 873 ).

**8.** Of course, since 18 U.S.C. § 1342 reached the use of a false name or address in connec-

tion with any "unlawful business," its substantive sweep may exceed that of Section 1341 which reaches fraud and similar crimes.

**9.** It is insignificant that the writ in *Travers* was one for *coram nobis*, rather than *habeas corpus*. See *Travers, supra*, 1174, 1175.

lated to the scheme under *Maze* to constitute a Section 1342 violation. Like *Maze*, the petitioner would have undoubtedly preferred to have the advice letters, the only mailings charged, misplaced. Also like *Maze*, the mailings themselves were not "for the purpose of conducting * * * any scheme." Thus petitioner did not conduct his check-kiting scheme "by means of the mails" as is required under Section 1342.

As in *Travers*, the Government failed to prove an essential element in both the Section 1341 and 1342 counts. Therefore, it is unnecessary for us to consider petitioner's alternative argument that he was denied a speedy trial under case law developed after our decision on the direct appeal.

Since we see no reason on the facts in this case to distinguish Section 1341 from Section 1342 for purposes of "retroactivity" or availability of collateral relief, the order denying petitioner's motion under 28 U.S.C. § 2255 is reversed, with instructions to grant the motion.