**Thaddeus M. OHRYNOWICZ, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

No. 76–1247.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 14, 1976.

Decided Oct. 12, 1976.

Certiorari Denied Dec. 13, 1976. See 97 S.Ct. 650.

---

Grady E. Holley, Springfield, Ill., for petitioner-appellant.

Donald B. Mackay, U.S. Atty., J. Douglas Weingarten, Asst. U.S. Atty., Springfield, Ill., for respondent-appellee.

Before FAIRCHILD, Chief Judge, and SWYGERT and BAUER, Circuit Judges.

SWYGERT, Circuit Judge.

This appeal presents the question of whether an order for personalized checks mailed by a bank pursuant to the opening of a new checking account is closely enough related to a fraudulent scheme using that account to support a conviction for mail fraud under 18 U.S.C. § 1341.[1] We hold that it is and affirm the conviction.

Petitioner Thaddeus M. Ohrynowicz was convicted in 1970 of conspiracy and seven counts of mail fraud. The charges arose from a "check kiting" scheme in which Ohrynowicz and Robert S. Strauss conspired to defraud a number of banks in which they had opened checking accounts under false names and addresses. Their plan was to draw checks on one bank for which sufficient funds were not available and then deposit or cash them at a different bank where they had opened accounts.

---

1.  18 U.S.C. § 1341 states:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

The grand jury returned an eleven count indictment against both Ohrynowicz and Strauss. Counts I and III accused both men of committing mail fraud under 18 U.S.C. § 1341 because in opening two of the checking accounts for a fraudulent purpose they had caused the mailing of an order by the banks for personalized checks. Counts II and IV alleged that both men had violated section 1341 by causing on two occasions "advice letters" transmitting insufficient funds checks which had been cashed or deposited at one bank to be mailed back to the banks on which the checks were drawn.

Counts VI, VII, and IX alleged that Ohrynowicz had violated 18 U.S.C. § 1342[2] by opening checking accounts under a false name and address with the intention of using the mails to carry on a fraudulent scheme. Counts V, VIII, and X charged that Strauss had committed similar crimes. Count XI alleged that Ohrynowicz and Strauss had committed a criminal conspiracy in violation of 18 U.S.C. § 371.

■ Strauss was tried alone on Counts II, IV, V, VIII, and X and was convicted on all counts. His conviction was affirmed in *United States v. Strauss*, 452 F.2d 375 (7th Cir. 1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1252, 31 L.Ed.2d 455 (1972) (*Strauss I*). Ohrynowicz was later tried and convicted on Counts I–IV, VI, VII, IX, and XI and sentenced to seven years in prison. This sentence was subsequently reduced to five years.[3]

This court vacated Strauss' conviction on all counts in 1973, relying on the Supreme Court's intervening decision in *United*

*States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974). *Strauss v. United States*, 516 F.2d 980 (7th Cir. 1975) (*Strauss II*). Ohrynowicz subsequently filed a motion in the district court for the Southern District of Illinois under 28 U.S.C. § 2255, claiming that his case was controlled by *Maze* and *Strauss II* and requesting that his conviction be vacated as well. The district court granted this motion as to Counts II, IV, VI, VII, IX, and XI, but denied it as to Counts I and III. Petitioner now appeals this finding.

## I

In *Maze* the defendant used a stolen credit card to charge a number of motel bills. The invoices which resulted from these transactions were then forwarded by mail to the bank which had issued the credit card. The defendant was subsequently convicted of mail fraud under 18 U.S.C. § 1341. The Supreme Court affirmed the Sixth Circuit's reversal of the conviction on the ground that the mailings were not sufficiently related to the defendant's fraudulent scheme to bring his conduct within the purview of the statute.

The Court noted that "under the statute, the mailing must be 'for the purpose of executing the scheme, as the statute requires,' *Kann v. United States*, 323 U.S. 88, 94, 65 S.Ct. 148, 89 L.Ed. 88 (1944), but '[i]t is not necessary that the scheme contemplate the use of the mails as an essential element,'" citing *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954). 414 U.S. at 400, 94 S.Ct. at 648.

---

2. 18 U.S.C. § 1342 states:

Whoever, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341 of this title or any other unlawful business, uses or assumes, or requests to be addressed by, any fictitious, false, or assumed title, name, or address or name other than his own proper name, or takes or receives from any post office or authorized depository of mail matter, any letter, postal card, package, or other mail matter addressed to any such fictitious, false, or assumed title, name, or address, or name other than his own proper name, shall be

fined not more than $1,000 or imprisoned not more than five years, or both.

3. Petitioner was out of prison on parole, but still under the supervision of probation authorities at the time this action was brought in the district court. It does not appear from the record whether that supervision is continuing at the present time. Even if petitioner is now totally free, however, he may still maintain a section 2255 action to have his convictions vacated as long as he brought the action while in the "custody" of probation authorities. *See Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); *Brough v. United States*, 454 F.2d 370 (7th Cir. 1971).

The Court held that Maze's conviction could not stand under this test, stating:

> Unlike the mailings in *Pereira,* the mailings here were directed to the end of adjusting accounts between the motel proprietor, the Louisville bank and Meredith, all of whom had to a greater or lesser degree been the victims of respondent's scheme. Respondent's scheme reached fruition when he checked out of the motel, and there is no indication that the success of his scheme depended in any way on which of his victims ultimately bore the loss. *Id.* at 402, 94 S.Ct. at 649.

In the case at bar the district court held, on the basis of *Maze,* that Counts II, IV, VI, VII, and IX should be vacated because they involved the mailings of collection letters between the defrauded banks after Ohrynowicz and Strauss had already received cash for the fraudulent checks. It distinguished, however, the mailed orders for personalized checks which underlay Counts I and III on the grounds that they "occurred before the scheme to defraud was completed [and] were in pursuance of that scheme. . . ."

Petitioner argues that this distinction should not be given controlling importance because obtaining personalized checks was superfluous to the success of his fraudulent scheme, since the checks which he used in attempting to defraud the banks were the unpersonalized ones which he was given upon opening an account. He contends that, like the defendant in *Maze,* he would have preferred to have the check orders misplaced or not mailed at all because the subsequent mailing of personalized checks to the false names and addresses he was utilizing would increase the chances of his apprehension.[4] *See* 414 U.S. at 402, 94 S.Ct. 645. Thus, he concludes, the mailing of the check orders was not "for the purpose of executing [his] scheme" within the meaning of 18 U.S.C. § 1341.

The Government asserts that the ordering of personalized checks did contribute to the furthering of the fraudulent scheme because it was a normal concomitant of opening a checking account and therefore substantially aided the petitioner in obtaining the temporary checks which he utilized at other banks. If the petitioner had not ordered personalized checks, the Government contends, the banks would have been alerted that he did not intend to use the checking account for legitimate purposes.[5]

The record in petitioner's original case does not contain a great deal of testimony on this issue. Nonetheless, the district court in this case concluded that there was enough evidence to support an inference that the ordering of personalized checks was a normal part of the transaction which resulted from opening an account, leading to the conclusion that the order was in furtherance of the fraudulent scheme. A trial judge's finding of facts ordinarily will not be disturbed unless they are without support in the record. *United States v. Sells,* 496 F.2d 912, 913–14 (7th Cir. 1974); *Crail v. United States,* 430 F.2d 459, 460 (10th Cir. 1970) (section 2255 case). Although the fact that we sit in the same

---

4. The Government attempts to rebut this claim by arguing that receipt of the check order by the printer and the mailing of the personalized checks to a false address would have neither a positive nor a negative effect on the successful completion of the scheme because the checks took a week to be printed and the scheme was to terminate after the third or fourth day. While it may be true that the defrauded banks were likely to learn of the scheme well before the checks were mailed, the petitioner's basic point remains valid: the receipt of personalized checks was in no way necessary to his scheme and insofar as the mailing of the checks would have any consequences at all, they could only be negative.

5. At other points in its brief, the Government asserts that the ordering of personalized checks was a necessary prerequisite to receiving an initial set of unpersonalized checks. The Government reiterated this claim at oral argument, at least as to ten of the eleven banks at which accounts were opened. Counsel for petitioner disputed the accuracy of this statement. The district court made no finding as to whether ordering checks was a prerequisite to opening an account and the record contains no evidence on this question. Because an absolute requirement that personalized checks be ordered is unnecessary to establish a connection for purposes of 18 U.S.C. § 1341, we decline to resolve the issue.

vantage point as the district judge in examining the original record necessarily gives us unusual freedom in reaching our own conclusion, nothing in the record convinces us that the district court was incorrect.

■ We therefore hold that the ordering of personalized checks was conduct in furtherance of petitioner's fraudulent scheme. Unlike the mailings in *Maze*, the mailing of these orders occurred prior to the fruition of that scheme and thus supports a conviction under 18 U.S.C. § 1341.

## II

Petitioner also contends that his convictions on Counts I and III must be vacated under our decision in *Strauss II*. Insofar as *Strauss II* dealt with offenses under 18 U.S.C. § 1341, it can easily be distinguished. The only section 1341 counts on which Strauss was tried involved the mailing of advice letters after checks backed by insufficient funds had already been deposited or cashed. Under *Maze*, Strauss' convictions on these counts could not stand. But this holding says nothing about the validity of convictions based on the mailing of check orders which took place before the "bad" checks were deposited or cashed.

Our holding in *Strauss II* with respect to Strauss' convictions under 18 U.S.C. § 1342 presents more troublesome considerations. Section 1342 proscribes the use of the mails for the purposes of carrying on a fraudulent scheme in conjunction with the adoption of false names or addresses. The section 1342 counts in the original indictment of Strauss and Ohrynowicz do not specify whether the mailings involved are those of the personalized check orders or those of the advice letters. The best reading of the indictment is that the grand jury was referring to both mailings. Since *Strauss II* held that the standard for the relationship required between the mailing and the fraudulent scheme was the same for section 1342 as for section 1341, and vacated Strauss' convictions under section 1342, *see* 516 F.2d at 985, the court's holding arguably implied that the mailing of the check orders was not in pursuit of the

fraudulent scheme for purposes of section 1341.

Upon close examination, however, the force of this argument dissolves. Since the court was only considering Strauss' case, and Strauss was never tried on the section 1341 counts involving the check orders, it understandably concerned itself only with the mailing of the advice letters. Thus, in analyzing Strauss' section 1342 convictions, the court referred to the advice letters as "the only mailing charged." 516 F.2d at 986. Accordingly, *Strauss II* is irrelevant to the validity of petitioner's convictions on Counts I and III.

The judgment of the district court is affirmed.